M. W. Turner, Jr. v. Commissioner, M. W. Turner, Sr. v. Commissioner.
Turner v. Commissioner
Docket Nos. 2460 and 2461.
United States Tax Court
1944 Tax Ct. Memo LEXIS 25; 3 T.C.M. (CCH) 1268; T.C.M. (RIA) 44394; November 30, 1944
*25 S. P. Cain, Esq., for the petitioners. Leonard Raum, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion These consolidated proceedings involve Federal income tax liability for the taxable year ended December 31, 1941. Docket No. 2460 involves a deficiency in the amount of $209.38 and Docket No. 2461, in the amount of $522.72. The respondent, in his deficiency notices to the respective petitioners herein, refused to recognize their respective wives as bona fide members of the M. W. Turner Hardware Company partnership for Federal income tax purposes. He included in the gross income of the petitioner, M. W. Turner, Sr., the sum of $1,588.49, representing the share of Rebecca Neel Turner in the net profits of the M. W. Turner Hardware Company for the calendar year 1941. Respondent included in the gross income of the petitioner, M. W. Turner, Jr., the sum of $794.24, representing Eunice Brinson Turner's share in the net profits of the M. W. Turner Hardware Company for the calendar year 1941. The only submitted issue is the propriety of that action. Findings of Fact The petitioners are individuals residing at Pelham, Georgia. Their respective income tax returns *26 for the taxable year were filed with the collector of internal revenue for the district of Georgia at Atlanta, Georgia. The M. W. Turner Hardware Company was a bona fide business partnership and entitled to recognition as such for Federal income tax purposes during the taxable year. M. W. Turner, Sr., and Rebecca Neel Turner, his wife, were each the owner of a 33 1/3 interest, and M. W. Turner, Jr., and Eunice Brinson Turner, his wife, were each the owner of a 16 2/3 interest in that partnership, throughout the taxable year. These interests were acquired in exchange for assets transferred to the partnership by the respective partners, and from those assets primarily arose the profits of the partnership for that year. Opinion LEECH, Judge: The sole issue submitted is the question of fact as to whether, for Federal income tax purposes, for the taxable year, the petitioners' wives are to be considered bona fide partners in a concededly valid partnership, and so taxable on their respective distributive shares of its profits. Our findings of fact dispose of this issue in the affirmative. Those facts, we think, are amply supported by the evidence. See ; *27 ; . The petitioners are father and son. Rebecca Neel Turner is the wife of M. W. Turner, Sr., and Eunice Brinson Turner is the wife of M. W. Turner, Jr. Petitioner, M. W. Turner, Sr., became connected with the Pelham Hardware Company, a corporation, in 1915 or thereabouts. He then acquired about $3,000 of the total capital stock of $40,000. Between 1914 and 1934 he increased his holdings so that in 1934 he owned approximately a one-half interest in that corporation. In 1934, M. W. Turner, Sr., withdrew from the Pelham Hardware Company and received physical assets of a value of $16,048.43. Upon the receipt of those assets the petitioners organized a new corporation under the name of the M. W. Turner Hardware Company, with an authorized capital stock of $10,000. At the time of the organization of that corporation 90 shares of the capital stock were issued in the name of M. W. Turner, Sr. The remaining 10 shares were issued to his son, M. W. Turner, Jr. The stock interest later changed, and at the time that corporation was dissolved in 1941 the father held 75 and the *28 son 25 shares. The petitioners also owned and operated another business enterprise under the name and style of the "Turner Oil Company", a partnership in which they were the only partners. This partnership, which was a "side line" and only incidentally involved herein, was engaged in selling gasoline. It maintained 6 gasoline stations at one time but in 1941 the number had been reduced to 5. Some of these stations were located a considerable distance from Pelham, Georgia. In the fore part of 1941, the officers of the M. W. Turner Hardware Company were advised that it was subject to the Unemployment Compensation Act. By reason of the extra work, detail and expense involved in making these periodical unemployment returns and other necessary corporate reports and returns the petitioners consulted with their attorney and their bankers and were advised that a considerable amount of this detail would be eliminated if the business was operated as a partnership. The matter was discussed by the petitioners with their wives and it was determined that the change over into a partnership would be effected about July 1, 1941. In the meantime, another son, Fortson Turner, who was employed by the *29 petitioners to supervise the operation of the Turner Oil Company, received notification that he was to be called under the Selective Service Act. M. W. Turner, Sr., was then almost 80 years old and becoming somewhat feeble. Necessary labor was becoming increasingly scarce. Because of this situation and the possibility that the petitioner, M. W. Turner, Jr., then 31, might also be called into service, the petitioners and their wives considered the effect of these developments on the future conduct of the two businesses the family was then operating. It was decided to adjust their affairs so as to preserve the hardware and furniture business as the more stable of the two. To this end it was arranged that in the formation of the new partnership, the respective wives of the petitioners would be admitted as members thereof. Between 1915 and 1934, Rebecca Neel Turner had advanced $4,500 to her husband, M. W. Turner, Sr., which was used in acquiring stock in the Pelham Hardware Company and meeting general household expenses. Although the certificates for this stock, as well as that in the M. W. Turner Hardware Company, were in the name of M. W. Turner, Sr., he regarded his wife, Rebecca *30 Neel Turner, as she was in fact, the owner of an undivided one-half interest in all of those stocks thus evidenced. Rebecca Neel Turner was to be made a partner in recognition of her financial interest in the stock of both of the preceding corporations, the assets of the latter of which were transferred to the partnership. Eunice Brinson Turner was to be made a partner in consideration of her agreement to render services to the Turner Oil Company and also to the Turner Hardware Company in the event her husband was called into service, or a labor shortage arose. The plan, as outlined, was carried into effect. On June 30, 1941, the corporation was dissolved and its assets were transferred to the partnership to be operated under the same name, with the petitioners and their wives constituting the partners thereof. An instrument was executed styled "Articles of Partnership", which was duly filed with the Clerk of the Superior Court of the State of Georgia. Article 1 of said agreement provides as follows: Article 1. Each of the said co-partners has an interest in the business and physical assets of said Company located at Pelham, Mitchell County, Georgia and Cairo, Grady County, Georgia, *31 as follows: Partner's
Name of Partner
share
M. W. Turner, Sr.
33 1/3 percent
Mrs. Rebecca Neel Turner
33 1/3 percent
M. W. Turner, Jr.
16 2/3 percent
Mrs. Eunice Brinson Turner
16 2/3 percent
The agreement also provided that M. W. Turner, Sr., was to be general manager with full power and authority, and M. W. Turner, Jr., was to be assistant manager. Each of the petitioners was to be paid a salary of $2,400 per annum unless a different rate was mutually agreed upon. The salaries were to be deducted as an expense before division of profits. The wives were to receive no salary, but the net profits and the losses of the partnership were to be shared in proportion to each partner's respective interest. The partnership was to continue at will. Upon the death or voluntary withdrawal of any partner, the remaining partners had the option to take over such partner's share at book value and without any allowance for good will. The capital interests were set up on the books as follows: M. W. Turner, Sr.
$17,058.41
M. W. Turner, Jr.
8,529.20
Mrs. R. N. Turner
17,058.41
Mrs. E. B. Turner
8,529.20
The partnership return filed by the M. W. Turner Hardware Company *32 for the calendar year ended December 31, 1941 shows the following distributions: Share
Net Profits
Salary
$1,588.49
M. W. Turner, Sr. $600
794.25
M. W. Turner, Jr.
900
1,588.49
Mrs. R. N. Turner
794.24
Mrs. E. B. Turner
The respective partners reported the above amounts as income in their Federal income tax returns for the calendar year 1941. During the year 1941, Eunice Brinson Turner did familiarize herself with the operation of and render services to the Turner Oil Company. In April, 1942, when Fortson Turner entered the military service, she devoted practically her entire time to the operation of that company. In addition she continued to render occasional service assisting her husband in the conduct of the hardware and furniture business. No salary was paid to Eunice Brinson Turner by the Turner Oil Company or by the M. W. Turner Hardware Company. Her capital interest in the latter partnership was the sole consideration received for her services rendered and to be rendered to both these enterprises. Had the Turner Oil Company employed another to perform the services Eunice Brinson Turner performed, the cost to it would have been $100 per month. We think, *33 and have so found, that the profits of the business of the M. W. Turner Hardware Company resulted primarily from the capital invested and not from the personal services of M. W. Turner, Sr., and his son, M. W. Turner, Jr., as respondent argues. Nothing to which respondent points impresses us. The father was almost 80 years old and growing feeble. The son was 31 but there were at least 6 other full-time employees engaged in selling inventory of hardware over the counter, which varied in amount from $10,000 to $15,000. The capital contribution of Eunice Brinson Turner was her share of the assets, which she in effect acquired from the others in consideration of her promise to serve both the Turner Oil Company and the hardware company without other compensation. That consideration, under the circumstances here, convinces us that it was honest, reasonable, and therefore full and adequate for her share in the assets which she with the others contributed to the hardware partnership. See . She actually did so serve both partnerships. That both the service and promise to serve included the Turner Oil Company does not *34 materially affect the situation. The partners in that company were also owners of the assets going into the Turner hardware partnership. And in fixing the consideration for her interest in those assets, it was reasonable and proper that they require her promise to serve to include the oil firm. The capital contribution of Rebecca Neel Turner was her equal share with that of her husband, M. W. Turner, Sr., in the assets that went into the hardware partnership. That she paid fully and adequately for that share is clearly demonstrated by the record. The $4,500 she advanced her husband, when he needed it, leaves no doubt of that fact in our opinion. It is worth noting that the Turner Oil Company partnership did not include the wives of M. W. Turner, Sr., and M. W. Turner, Jr., as partners. The father and son continued as sole partners in that firm and reported the profits therefrom. The fact supports, we think, the bona fides of the M. W. Turner hardware partnership. The organization of that partnership was not a mere attempt to assign the income of M. W. Turner, Sr., and his son, M. W. Turner, Jr., to their wives for tax purposes. That partnership, we think, was prompted by the expectation *35 of an economic advantage in eliminating the necessity for certain corporate reports which petitioners considered burdensome. The partnership was legally created and that fact properly recorded. The profits resulted primarily from capital invested. The division of those profits, under the agreement, we think approximately reflected the respective capital investments of the partners. These shares of the profits were credited on the books of the firm to the partners and were withdrawn by them. Those profits for the tax year are taxable to the partners as provided in the partnership agreement. Decisions will be entered under Rule 50.